Avi Wagner, Esq. (SBN 226688)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 491-7949
Facsimile:  (310) 694-3967
Email: avi@thewagnerfirm.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GRANT SPENCER, Derivatively and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PAMELA G. MARRONE, ELIN MILLER, DR. PAMELA CONTAG, TIM FOGARTY, SHAUGN STANLEY, GEORGE H. KERCKHOVE, LES LYMAN, and  RICH ROMINGER<br><br>Defendants,<br><br>MARRONE BIO INNOVATIONS, INC.<br><br>Nominal Defendant | Case No.:<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Grant Spencer ("Plaintiff"), by and through the undersigned attorneys, brings this action derivatively on behalf of nominal defendant Marrone Bio Innovations, Inc ("Marrone" or the "Company") and alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Marrone, and information readily obtainable on the internet, as follows:

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of the Company against the members of its Board of Directors ("Board") seeking to remedy defendants' breaches of fiduciary duties and other violations of the law that occurred from approximately the fourth quarter of 2013 through the present (the "Relevant Period").

2.     According to public filings, nominal party Marrone makes bio-based pest management and plant health products.  Bio-based products are comprised of naturally occurring microorganisms, such as bacteria and fungi, and plant extracts.

3.     Marrone is a publicly traded company whose securities trade on the NASDAQ under the symbol "MBII".  Throughout the Relevant Period, the Individual Defendants (defined herein) caused or allowed the Company in its public filings and press releases to issue false and/or misleading statements, as well as omit to disclose material adverse facts about the Company's business operations and prospects.  Specifically, the Individual Defendants caused the Company to issue statements concerning Marrone's revenue and revenue recognition practices that were without any reasonable basis because, as would later be admitted: 1) Marrone's financial statements contained errors related to the improper recognition of revenues; 2) the Company lacked adequate internal controls over financial reporting; and

296735.1 MARRONEBIO

3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

4.     On September 3, 2014, the Company filed a Form 8-K with the SEC, announcing, among other things, that certain of its previously issued financial statements should no longer be relied upon as being in compliance with generally accepted accounting principles.  In the September 3, 2014 Form 8-K, the Company stated, in pertinent part:

> On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.

> The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

5.     On news of the aforementioned accounting impropriety, the trading price of the Company's shares fell $2.50, or over 44%, to close at $3.15 on September 3, 2014.  The Company has been subjected to securities class action litigation as a result of this decline in value.

6.     The wrongful actions of the Individual Defendants' have therefore caused the Company to suffer substantial injury.  The Individual Defendants were aware of the Company's policies regarding accounting and revenue recognition and were at all times charged with acting in the best interests of the Company and its shareholders yet they breached their fiduciary duties by failing to properly oversee and manage the Company's accounting policies and causing the harm to the Company as detailed herein.   The Individual Defendants remain in breach of their fiduciary duties and absent Court intervention, the Company will continue to be harmed.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a), as Plaintiff and defendants are either citizens of different states or citizens of a state and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000 exclusive of interests and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

8.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in, and maintains operations in, this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (1) one or more defendants either resides in, or maintains executive offices in, this District; (2) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred within this District, and (3) defendants have received substantial compensation in this District by conducting business herein and by engaging in numerous activities that have had an effect in this District.

## PARTIES

**Plaintiff Shareholder**

10.     Plaintiff, is a current Marrone shareholder and has been a Company shareholder continuously throughout the Relevant Period.  Plaintiff is a citizen of the state of Michigan.

**Nominal Defendant Marrone Bio Innovations, Inc.**

11.     Defendant Marrone Bio Innovations, Inc. provides bio-based pest management and plant health products for the crop protection, water treatment, and other target markets in the United States and internationally.  Marrone is headquartered in Davis, California and trades on the Nasdaq Global

Market ("NASDAQ") under the ticker symbol "MBII."  Plaintiff is informed and believes that Marrone is a citizen of the states of Delaware and California.

**Individual Defendants**

12.     Defendant Pamela G. Marrone ("P. Marrone") is a director of Marrone and served as the Company's Chief Executive Officer ("CEO") and President during the Relevant Period.  Due to her executive position at the Company P. Marrone had or should have had access to internal corporate documents including non-public information concerning the Company's revenue and revenue recognition policies.  Defendant P. Marrone is a citizen of the state of California.

13.     Defendant Elin Miller ("Miller") has served on the Board since 2011 and therefore has been a Board member during the Relevant Period.  Miller serves as Chairperson of the Board.  Due to her director position at the Company, Defendant Miller had or should have had access to internal corporate documents including non-public information concerning the Company's revenue and revenue recognition policies.  Defendant Miller is a citizen of the State of Oregon.

14.     Defendant Dr. Pamela Contag ("Contag") is a Board member and has therefore served on the Board during the Relevant Period.  Due to her director position at the Company, Defendant Contag had or should have had access to internal corporate documents including non-public information concerning the Company's revenue and revenue recognition policies.  Defendant Contag is a citizen of the State of California.

15.     Defendant Tim Fogarty ("Fogarty") has served on the Board since 2011 and therefore has served as a Board member through the Relevant Period.  Fogarty serves on the Board's Audit Committee.  Fogarty is currently the Chief Financial Officer and a Partner of the Contrarian Group, Inc., an investment and management company which is also an investor in Marrone through its limited partnership, CGI Opportunity Fund II, L.P.  Fogarty has a degree in accounting and holds a California CPA license.  Due to his director position at the Company, including his role on the Audit Committee, Defendant Fogarty had or should have had access to internal corporate documents including non-public

information concerning the Company's revenue and revenue recognition policies.  Defendant Fogarty is a citizen of the State of California.

16.     Defendant Shaugn Stanley ("Stanley") has served as a Board member since 2012 and therefore served on the Board during the Relevant Period.  Stanley serves as the Chairman of the Board's Audit Committee.  Stanley is currently Senior Managing Director at Stifel Financial.  Stanley began his career as an accountant at Deloitte.  Stanley received a BBA in Accounting from Stephen F. Austin State University, and is a licensed (inactive) Certified Public Accountant.  Due to his director position at the Company, including his role on the Audit Committee, Defendant Stanley had or should have had access to internal corporate documents including non-public information concerning the Company's revenue and revenue recognition policies.  Defendant Stanley is a citizen of the State of California.

17.     Defendant George H. Kerckhove ("Kerckhove") joined the Board in July 2014 and therefore served on the Board during the Relevant Period.  Due to his director position at the Company, Defendant Kerckhove had or should have had access to internal corporate documents including non-public information concerning the Company's revenue and revenue recognition policies.  Defendant Kerckhove is a citizen of the State of Wisconsin.

18.     Defendant Les Lyman ("Lyman") serves as a Board member and therefore has served as a Board member during the Relevant Period.  Due to his director position at the Company, Defendant Lyman had or should have had access to internal corporate documents including non-public information concerning the Company's revenue and revenue recognition policies.  Defendant Lyman is a citizen of the State of California.

19.     Defendant Rich Rominger ("Rominger") serves as a Board member and therefore has served as a Board member during the Relevant Period.  Rominger served as the Chairman of the Board from 2007 through to 2013.  Due to his director position at the Company Defendant Rominger had or should have had access to internal corporate documents including non-public information concerning

the Company's revenue and revenue recognition policies.  Defendant Rominger is a citizen of the State of California.

20.     The defendants referenced above in ¶¶ 12 – 20 are sometimes referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

21.     By reason of their positions as officers and directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were, and are, required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were, and are, required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest or benefit.

22.     Each director and officer of the Company owes (and / or formerly owed) to Marrone and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

23.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Marrone, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their executive, managerial and directorial positions with Marrone, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations of the Company.

296735.1 MARRONEBIO

24.     At all times relevant hereto, each of the Individual Defendants was the agent of the other Individual Defendants and of Marrone, and was at all times acting within the course and scope of such agency.

25.     To discharge their duties, the officers and directors of Marrone were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Marrone were required to, among other things:

a.     manage, conduct, supervise and direct the business affairs of Marrone in accordance with all applicable laws;

b.     neither violate nor knowingly permit any officer, director or employee of Marrone to violate applicable laws, rules and regulations;

c.     establish and maintain systematic and accurate/accounting standard compliant records and reports of the business and affairs of Marrone and procedures for the reporting of the business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

d.     neither engage in self-dealing nor knowingly permit any officer, director or employee of Marrone to engage in self-dealing;

e.     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate/accounting standard compliant statements to the SEC and the investing public;

f.     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

g.     properly and accurately guide investors regarding the true financial condition of the Company at any given time, including making accurate statements about the Company's

financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times; and

h.     remain informed of how Marrone conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

26.     Each of the Individual Defendants, by virtue of his or her position as a director and officer, owed to the Company and its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants alleged herein involves violations of their obligations as directors and officers of Marrone, the absence of good faith on their part and a reckless disregard for their duties to the Company and its shareholders.  The Individual Defendants were aware or should have been aware that this posed a risk of serious injury to the Company.  The conduct of the Individual Defendants, who were also officers and/or directors of the Company, has been ratified by the remaining Individual Defendants who collectively comprised all of Marone's Board during the Relevant Period.

27.     The Individual Defendants breached their duties of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to misrepresent its financial results and prospects, as detailed herein, and by failing to prevent employees and/or officers of the Company from taking such illegal actions.  In addition, the Company is now the subject of at least one lawsuit alleging violations of the federal securities laws, which necessitates that the Company incur excess costs arising from the Individual Defendants' wrongful course of conduct.

28.     Further, Marrone has established a code of business conduct and ethics for Company employees and Board members to adhere to (the "Code").  The Code states in pertinent part that:

It is the policy of Marrone Bio Innovations, Inc. (the "Company") to conduct its affairs in accordance with all applicable laws, rules and regulations of the countries in which it does business. This Code of Business Conduct (this "Code") applies to the Company's employees, officers and directors (collectively, "Company Personnel"). This Code also applies to certain independent contractors, consultants and advisors who work at the Company's facilities or on the Company's behalf, in which case those persons will be notified and provided a copy of this Code. Such persons will be deemed Company Personnel for purposes of this Code.

This Code is designed to promote:

- honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;
- full, fair, accurate, timely and understandable disclosure in the reports and documents the Company files with, or submits to, the Securities and Exchange Commission and in other public communications made by the Company; ; [sic]
- compliance with applicable governmental laws, rules and regulations;
- the prompt internal reporting to the appropriate person of violations of this Code; and
- accountability for adherence to this Code.

The Company has established standards for behavior that affect the Company, and Company Personnel must comply with those standards. The Company promotes ethical behavior and encourages Company Personnel to talk to supervisors, managers, the Company's Chief Compliance Officer, or other appropriate personnel when in doubt about the best course of action in a particular situation. Anyone aware of a situation that he or she believes may violate or lead to a violation of this Code should follow the guidelines under "Compliance and Reporting" below. . . .

29.     Similarly, the Company has established an Audit Committee charter (the "Audit Committee Charter"). Defendants Fogarty and Stanley serve on the Audit Committee. The Audit Committee Charter states, in pertinent part:

The audit committee (the "**Committee**") of the Board of Directors (the "**Board**") of Marrone Bio Innovations, Inc., a Delaware corporation (the "**Company**"), is appointed by the Board for the purpose of overseeing the Company's accounting and financial reporting processes and the audits of the Company's financial statements. In so doing, the Committee shall endeavor to maintain free and open communication between the

Company's directors, independent registered public accounting firm and financial management.

* * * *

In fulfilling its purposes as stated in this Charter, the Committee shall undertake the specific duties and responsibilities listed below and such other duties and responsibilities as the Board shall from time to time prescribe, and shall have all powers necessary and proper to fulfill all such duties and responsibilities. Subject to applicable Board and stockholder approvals, the Committee shall:

A.  **Financial Statement & Disclosure Matters**

1.      Review the policies and procedures adopted by the Company to fulfill its responsibilities regarding the fair and accurate presentation of financial statements in accordance with generally accepted accounting principles ("**GAAP**") and applicable rules and regulations of the U.S. Securities and Exchange Commission (the "**SEC**") and NASDAQ;

2.      Oversee the Company's accounting and financial reporting processes;

3.      Oversee audits of the Company's financial statements;

4.      Review with the Company's independent registered public accounting firm, management and internal auditors any information regarding "second" opinions sought by management from any other accounting firm with respect to the accounting treatment of a particular event or transaction;

5.      Review and discuss reports from the Company's independent registered public accounting firm regarding: (a) all critical accounting policies and practices to be used by the Company; (b) all alternative treatments of financial information within GAAP that have been discussed with management, including ramifications of the use of such alternative disclosures and treatments and the treatment preferred by the independent registered public accounting firm; and (c) other material written communications between the independent registered public accounting firm and management, such as any management letter or schedule of unadjusted differences;

6.      Review all certifications required to be made by the Company's principal executive officer and principal financial officer in connection with the Company's periodic reports under the Act or pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act;

7.      Review with management and the Company's independent registered public accounting firm the Company's financial statements (including disclosures made under "Management's Discussion and Analysis of Financial Condition and Results of Operations") prior to the filing with the SEC of any report containing such financial statements;

8.     If deemed appropriate, recommend to the Board that the Company's audited financial statements be included in its annual report on Form 10-K for the last fiscal year;

9.     Prepare and approve the report required by the rules of the SEC to be included in the Company's annual proxy statement in accordance with the requirements of Item 7(d)(3)(i) of Schedule 14A and Item 407 of Regulation S-K.

30.     In committing the wrong-doing as alleged in detail herein, the Individual Defendants were in violation of the terms of the Code, and therefore in breach of their fiduciary duties as directors of Marrone to the Company's shareholders.  Similarly, in committing the wrong-doing as alleged herein, Defendants Fogarty and Stanley were in violation of the terms of the Audit Committee Charter, and therefore in breach of the fiduciary duties owed to the shareholders of Marrone.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

31.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with, and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

32.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: 1) conceal the fact that the Company was improperly misrepresenting its financial results in order to allow Marrone to artificially inflate the price of the Company's shares; 2) maintain the Individual Defendants' executive and directorial positions at Marrone and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and 3) deceive the investing public, including shareholders of Marrone, regarding the Individual Defendants' management of Marrone's operations, the Company's financial health and stability specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.

33.     In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

34.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least March 6, 2014, and continuing thereafter.  During this time, the Individual Defendants caused the Company to conceal the true facts that Marrone was misrepresenting its financial results and violating applicable laws.   In addition, the Individual Defendants caused to be disseminated false statements about Marrone's financial performance and business prospects as alleged herein.

35.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things: 1) to disguise the Individual Defendants' breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; 2) to conceal adverse information concerning the Company's operations, financial condition and business prospects including at a time when, as discussed below, the Company undertook a public offering of its securities; and 3) to artificially inflate the price of Marrone's common stock so they could protect and enhance their executive and directorial positions as well as the substantial compensation and prestige they obtained as a result thereof.

36.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

37.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary

wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

38.     Marrone makes bio-based pest management and plant health products.  The Company's headquarters are located in Davis, California.  According to the Company's most recent annual proxy filed with the SEC, the Company makes "bio-based pest management and plant health products."  Bio-based products are purportedly comprised of naturally occurring microorganisms, such as bacteria and fungi, and plant extracts.   The Company further purports to "target the major markets that use conventional chemical pesticides, including certain agricultural and water markets, where our bio-based products are used as substitutes for, or in connection with, conventional chemical pesticides"  In addition, the Company purports to "target new markets for which there are no available conventional chemical pesticides, the use of conventional chemical products may not be desirable or permissible because of health and environmental concerns or the development of pest resistance has reduced the efficacy of conventional chemical pesticides."

39.     According to a prospectus filed with the SEC by the Company on June 6, 2014 for the public offering of shares of Company common stock, the Company's common stock has been listed on the Nasdaq Global Market under the symbol "MBII" since August 2, 2013, prior to which time, there was no public market for the Company's stock.

### The Individual Defendants Cause or Allow the Company to Make Materially False And Misleading Statements During the Relevant Period

40.     On March 6, 2014, the Company issued a press release announcing results for the fourth quarter and fiscal year ended December 31, 2013.  For the quarter, Marrone reported revenues of $6 million, representing growth of 106%.  Revenue for the full year 2013 was reported at $14.5 million, representing growth of 104%.  The March 6, 2014 press release contained additional statements from

defendants pertaining to the Company's fourth quarter and fiscal 2013 performance, including in relevant part:

> "Our robust fourth quarter results capped a transformative year for Marrone Bio Innovations," said Pam Marrone, Chief Executive Officer of Marrone Bio Innovations. "I am extremely pleased with the progress we have achieved in 2013. We continued to broaden our sales into high value specialty crops, launched into row crops in North America and also extended our commercial reach across the globe. Our commercial success in the fourth quarter as well as our numerous scientific and operational milestones in 2013 underscore our confidence that we will continue to lead the shift to biologically-based alternatives for pest management and plant health."

41.     On March 25, 2014, the Company filed an annual report Form 10-K with the SEC which was signed by defendants P. Marrone and Glidewell, and reiterated the Company's previously announced quarterly and annual financial results and financial position.  In addition, the March 25, 2014 Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants P. Marrone and Glidewell, stating that the financial information contained in the March 25, 2014 Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.  The Form 10-K was also signed by all of the Company's directors at the time.

42.     Moreover, the March 25, 2014 Form 10-K contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

### Revenue Recognition

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

43.     On March 28, 2014, the Company announced that Defendant Glidewell had resigned from the Company.

44.     On May 13, 2014, the Company issued a press release announcing financial results for the first quarter ended March 31, 2013.  Marrone reported revenues for the first quarter 2014 of $2.8

million, compared to $2.7 million for the first quarter of 2013, purportedly in-line with the Company's expectations.

45.     On May 15, 2014, the Company filed a Form 10-Q with the SEC which was signed by defendant Boyd, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed SOX certifications by defendants P. Marrone and Boyd, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

46.     Moreover, the first quarter Form 10-Q contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

***Revenue Recognition***

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

47.     On May 16, 2014, the Company announced the filing of a registration statement with the SEC on Form S-1 (the "Registration Statement") for a public offering of up to $35 million of common stock to be sold by the Company and selling stockholders.  The Registration Statement covered shares Marrone may sell to the underwriters under a 30-day option to purchase additional shares.  The Registration Statement was declared effective on June 5, 2014.

48.     The Registration Statement / Form S-1 filed by the Company with the SEC on May 16, 2014 referenced Company financial information as of March 31, 2014 and year end 2013, and included the following statements concerning the preparation of its financial information:

**2. Significant Accounting Policies**
*Basis of Presentation*

The condensed consolidated financial statements include the accounts of the Company and its wholly-owned subsidiary. All significant intercompany balances and transactions have been eliminated in consolidation.

The accompanying financial information as of March 31, 2014 and for the three months ended March 31, 2014 and 2013 have been prepared by the Company, without audit, in accordance with generally accepted accounting principles in the United States (GAAP) and applicable rules and regulations of the Securities and Exchange Commission regarding interim financial reporting. Certain information and note disclosures normally included in the financial statements prepared in accordance with GAAP have been condensed or omitted pursuant to such rules and regulations. However, the Company believes that the disclosures are adequate to make the information presented not misleading. The information included in this quarterly report on Form 10-Q should be read in conjunction with the consolidated financial statements and accompanying notes included in our Annual Report on Form 10-K for the fiscal year ended December 31, 2013.

49.     Thereafter, on June 5, 2014, the Company announced the pricing of 4,500,000 shares of its common stock at $9.50 per share in a follow-on public offering.  Marrone stated in a press release that it would sell 3,900,000 shares in the offering and the remaining 600,000 shares would be sold by an existing stockholder, Syngenta Ventures Pte. LTD.  In addition, the Company announced that the underwriters had a 30-day option to purchase up to 675,000 additional shares of common stock from MBI and that MBI would not receive the proceeds from the sale of shares by the selling stockholder.

50.     On June 11, 2014, the Company announced the closing of the follow-on offering.  The Company stated that the net proceeds received from this offering would be approximately $40.0 million, after deducting estimated underwriting discounts and commissions and estimated offering expenses.

51.     On August 7, 2014, the Company issued a press release announcing the Company's financial results for the second quarter ended June 30, 2014.  Marrone reported revenues for the second quarter of $3.6 million, compared to $4.5 million in the second quarter of 2013.  The August 7, 2014 press release also stated that, "[A]s a result of the impact of bad weather on the year and the late

Tuesday resignation of its COO, the Company is unable to give annual guidance at this time, but may be able to provide annual guidance at a later date."

52.     Also on August 7, 2014, the Company announced the resignation of its Chief Operating Officer, Hector Absi ("Absi").

53.     The following day, August 8, 2014, the trading price of the Company's stock decreased to as low as $5.31 per share on heavy trading volume.  Nevertheless, the trading price of the Company's stock was still artificially inflated because the Individual Defendants continued to misrepresent the Company's revenue recognition policies.

54.     On August 13, 2014, the Company filed a Form 10-Q with the SEC which was signed by defendant Boyd, and which reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed SOX certifications by defendants P. Marrone and Boyd, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

55.     Moreover, the August 13, 2014 second quarter Form 10-Q contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

***Revenue Recognition***

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

56.     The statements referenced above regarding the Company's financial statements, revenue and revenue recognition  were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to the Individual Defendants or recklessly disregarded by them. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to

disclose that:  (1) Marrone's financial statements contained errors related to the improper recognition of revenues; (2) the Company lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

57.    On September 3, 2014, the Company issued a press release and filed a Form 8-K with the SEC announcing that certain of its previously issued financial statements should no longer be relied upon as being in compliance with generally accepted accounting principles.  In the September 3, 2014 Form 8-K, the Company stated, in part:

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**.

On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction.  On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.

The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

58.    On this news, the trading price of the Company's shares fell $2.50, or over 44%, to close at $3.15 on September 3, 2014.

59.    Further, following the Company's announcement on September 3, 2014, news surfaced that the Company had been sued for violations of the federal securities laws, in part in relation to the Company's revenue recognition policies.

296735.1 MARRONEBIO

60.     Therefore, as a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the Company's other public shareholders have suffered significant losses and damages.

61.     The Individual Defendants, by their fiduciary duties of care, good faith and loyalty, owe and owed Marrone and its shareholders a duty to ensure that the Company's public statements fairly presented, in all material respects, Marrone, as well as issues material to the Company's management, internal controls, disclosures and operations.  Further, as members of the Audit Committee, defendants Fogarty and Stanley had a special duty to know and understand the information published in the Company's financial statements and to ensure that the Company had proper internal controls and reporting systems.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

62.     Plaintiff brings this action derivatively in the right and for the benefit of Marrone to redress injuries suffered, and to be suffered, by Marrone as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Marrone is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction in this Court that it would not otherwise have.

63.     Plaintiff will adequately and fairly represent the interests of Marrone and its shareholders in enforcing and prosecuting its rights.

64.     Plaintiff is an owner of Marrone common stock and owned such stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

65.     At the time that this action was commenced, the Board consisted of the following eight individuals, P. Marrone, Miller, Contag, Fogarty, Stanley, Kerckhove, Lyman and Rominger.

66.     As a result of the facts set forth herein, Plaintiff did not made any demand on the Board to institute this action against the Individual Defendants.  Such demand would have been a futile and

useless act with respect to each and every one of the Individual Defendants because they are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the reasons set forth below.

67.    The entire Board has demonstrated its inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the Company for the violations of law complained of herein.  Every Board member is in violation of their fiduciary duties to Marrone's shareholders, as described herein, and every Board member is in violation of the Code.  Therefore, no reasonable Marrone stockholder would reasonably believe that a majority of the members of the Board would be able to independently and properly consider a demand in good faith and, accordingly, demand is excused.

68.    Every member of the Board declined to inform themselves of misconduct complained of herein, even when they had a reasonable basis to believe that further investigation was warranted, as is evidenced for example by the resignation of Absi in August 2014, the inability of the Company to provide annual guidance at the same time, and the following significant decline of the trading price of the Company's stock.  Thus, demand is excused.

69.    Defendants Fogarty and Stanley are members of the Audit Committee and therefore had a clear duty to be kept informed about the Company's accounting procedures, and yet just as clearly they disregarded such duties.  Defendants Fogarty and Stanley have violated the terms of the Audit Committee Charter.  As such, defendants Fogarty and Stanley are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action.

70.    The principal professional occupation of defendant P. Marrone is her employment with Marrone as its President and CEO, pursuant to which she has received and continues to receive compensation and other benefits.  Thus, defendant P. Marrone lacks independence rendering her incapable of impartially considering a demand to commence and vigorously prosecute this action.

71.     Each member of the Board faces a substantial likelihood of liability for breaching their fiduciary duties of loyalty and good faith as alleged herein, and are therefore incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action.

72.     Each member of the Board faces the possibility of liability for alleged violations of the federal securities laws in relation to the Company's accounting procedures and public disclosures, and is therefore incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action.

## COUNT I

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION)**

73.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

74.     As alleged in detail herein, each of the Individual Defendants had a duty to ensure that Marrone disseminated accurate, truthful and complete information to its shareholders.

75.     The Individual Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate materially misleading and inaccurate information to its shareholders through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

76.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II

**(AGAINST INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR FAILING TO MAINTAIN INTERNAL CONTROLS)**

77.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

296735.1 MARRONEBIO

78.     As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with accepted accounting principles and when put on notice of problems with the Company's operations, exercise good faith in taking appropriate action to address the problems identified.

79.     The Individual Defendants willfully ignored the problems with Marrone's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence.

80.     As a direct and proximate result of Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

## COUNT III

**(AGAINST INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY)**

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     The Individual Defendants owed and owe Marrone fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Marrone the highest obligation of good faith, fair dealing, loyalty and due care.

83.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

84.     As a direct and proximate result of Individual Defendants' failure to perform their fiduciary obligations, Marrone has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

85.     As a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

86.     Plaintiff, on behalf of Marrone, has no adequate remedy at law.

## COUNT IV

### (AGAINST INDIVIDUAL DEFENDANTS FOR UNJUST ENRICHMENT)

87.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Marrone.

89.     Plaintiff, as a shareholder and representative of Marrone, seek restitution from these Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Individual Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT V

### (AGAINST ALL INDIVIDUAL DEFENDANTS FOR ABUSE OF CONTROL)

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Marrone, for which they are legally responsible.  In particular, the Individual Defendants abused their positions of authority by causing or allowing Marrone to misrepresent material facts regarding its financial position and business prospects.

92.     As a direct and proximate result of the Individual Defendants' abuse of control, Marrone has sustained significant damages.

93.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

94.     Plaintiff, on behalf of Marrone has no adequate remedy at law.

## COUNT VI

## (AGAINST ALL INDIVIDUAL DEFENDANTS FOR GROSS MISMANAGEMENT)

95.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

96.     The Individual Defendants had a duty to Marrone and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Marrone.

97.     The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Marrone in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Individual Defendants breached their duties of due care, diligence and candor in the management and administration of Marrone's affairs and in the use and preservation of Marrone's assets.

98.     During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants caused Marrone to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Marrone, thus breaching their duties to the Company.  As a result, the Individual Defendants grossly mismanaged Marrone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

(a)     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

(b)     Awarding to Marrone restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

(c)     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

(d)     Ordering Marrone to implement enhanced corporate governance and internal control procedures including appointing additional independent directors to the Board, bringing all filings with the SEC current forthwith, and initiating appropriate tests and then strengthening the Company's internal audit and control functions; and

(e)     Granting such other and further relief as the Court deems just and proper.


## JURY DEMAND

99.     Plaintiff demands a trial by jury.


Dated:  November 25, 2014                    Respectfully submitted,

                                            By:  *s/ Avi Wagner*
                                            Avi Wagner
                                            THE WAGNER FIRM
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, California 90067
                                            Telephone: (310) 491-7949
                                            Facsimile:  (310) 694-3967
                                            Email: avi@thewagnerfirm.com

                                            *Attorneys for Plaintiff*

VERIFICATION

I, Grant Spencer, do hereby verify that I am a holder of common stock of Marrone Bio Innovations, Inc., and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Derivative Complaint ("Complaint").  I have authorized the filing of the Complaint.  I have reviewed the Complaint and all of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.


DATE: November 25, 2014

Grant Spencer